# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| LEON WEINGRAD, on behalf of himself and others similarly situated, | : <br> : CIVIL ACTION FILE NO. <br> : |
| Plaintiff, | : <br> : <br> : **COMPLAINT – CLASS ACTION** |
| v. | : <br> : |
| TIER ONE INSURANCE COMPANY d/b/a AFLAC | : **JURY TRIAL DEMANDED** <br> : <br> : |
| Defendant. | : |

Plaintiff Leon Weingrad (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Tier One Insurance Company d/b/a Aflac ("Aflac") violated the TCPA by sending multiple telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

4. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

5. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

6. Plaintiff Leon Weingrad is an individual.

7. Defendant Tier One Insurance Company is an insurance company that is headquartered and has its principal place of business in this District.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9. This Court has general personal jurisdiction over Tier One d/b/a Aflac because it is headquartered and has its principal place of business in this District.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District.

## BACKGROUND

The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.

11. The TCPA prohibits sending multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that sends those solicitations, or "on whose behalf" such solicitations are sent. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

15. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. Plaintiff Weingrad's telephone number, (503) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

17. Plaintiff Weingrad uses the telephone number for his own personal, residential, and household needs and reasons.

18. Plaintiff Weingrad does not use the number for business reasons or business use.

19. The number is a residential telephone line because it is assigned to a telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20. The number is assigned to a residential cellular telephone service.

21. Plaintiff Weingrad's number has been on the National Do Not Call Registry for years on the Registry prior to receiving the calls at issue.

22. Despite that, Mr. Weingrad received at least 9 violative calls from Defendant between at least November 15, 2024 and present.

23. The calls all utilized "spoofed" caller IDs, including 503-755-6163, 503-755-6147, 503-755-6253, 503-755-6720, 503-755-6342, 503-755-6641, 503-944-8692, 503-233-0913, and 503-246-0143, and occurred on November 15, 22, 23, December 5, 6, of 2024, and March 1, 7, and 10, 2025.

24. The calls all utilized the same script, and were all placed with the ViciDial automatic dialer.

25.     When the Plaintiff answered, each call in each instance, the Plaintiff heard ViciDial's "droplet" sound and then an agent who stated that they ere calling from a "local insurance agency" and were calling to help people "45 and older to get affordable final expense coverage to pay their burial and cremation costs."

26.     During multiple of the calls, including two calls on December 6, the caller stated that the insurance provided would be Defendant Aflac's insurance coverage and stated that the Plaintiff would be speaking with Aflac directly to complete the sales and enrollment process. However, Defendant was experiencing a computer error that day that prevented Plaintiff from investigating the calls further.

27.     Finally, fed up that he was continuing to receive such illegal calls, and determined to ascertain that Defendant Aflac was indeed sending them, during a call on March 10, 2025 from the "spoofed" caller ID 503-246-0143, the Plaintiff went through the sign up and purchase process for an Aflac insurance policy. After speaking to "Marco," who made the initial sales pitch, the Plaintiff was then transferred to "Lucas," who stated that he would be happy to "fill an application for you for Aflac," who he billed as the "number one company" in the life insurance industry.

28.     After the Plaintiff spoke to "Lucas," "Lucas" transferred the call to an individual named "Santosh," who confirmed that the Plaintiff was purchasing

$12,000 of life insurance coverage for $38.91 per month, who provided a policy number.

29. During the call, the Plaintiff also received a text message containing a link to policy documents prominently featuring the Defendant, which the Plaintiff later reviewed but did not sign.

30. A copy of the first page of the policy is reproduced on the following page:



## AUTHORIZATION FOR RELEASE OF PERSONAL AND MEDICAL INFORMATION

I authorize any physician, hospital, pharmacy, pharmacy benefit manager, health information exchange, health plan, health insurance plan, health care provider or health care facility, health care professional, clinic, laboratory, medical facility, governmental agency, any insurance company or any other entity that has any diagnosis, prescription or other medical information about me, to disclose my entire medical record and any other protected health information including, the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection, sexually transmitted diseases, mental illness, alcohol, drugs, and tobacco to Tier One Insurance Company or its reinsurers, employees, or representatives ("Tier One"). This authorization overrides any restrictions that I may have in place with any entity regarding the release of my medical information. Health information obtained will not be re-disclosed without my authorization unless permitted by law, in which case it may not be protected under federal privacy rules. I also authorize MIB, Inc. ("MIB"), and any MIB member insurer, to provide my medical or personal information to Tier One, its reinsurer or any MIB-authorized third-party administrator performing underwriting services for Tier One. I also authorize Tier One, its reinsurer or authorized third-party administrator, to make a brief report of my personal or protected health information to MIB. I authorize any consumer reporting agency to release any credit reports, occupation or travel history, or driving record of mine to Tier One, its agents, employees and representatives.

Tier One and its affiliates may use and disclose information received under these authorizations where required to underwrite your application or if not required, for insurance related operations, except for MIB information, to obtain reinsurance and for any purposes described in this consent. Tier One may disclose my information to data brokers and other data sources, to obtain information about my activities. Tier One may use and analyze this information for any purposes permitted by law, including general underwriting and insurance purposes, improving products and services, enhancing account administration, internal risk controls, fraud detection, product research and development, and marketing.

These authorizations shall be valid for 30 months from this date, or the time limit permitted by law in the state where the policy is issued. You may revoke this authorization at any time, subject to the rights of an individual who acted in reliance on the authorization prior to the notice of revocation, by sending written notice to Tier One Insurance Company, P.O. Box 14863 Lexington, KY 40512-4863. Except for the MIB information, Tier One may use your information for an unlimited period for general underwriting and insurance purposes and to improve the products and services.

TAR100
AFLMS07662

072822

31. After that point, all the calls bearing the same "local insurance agency" script stopped.

32. Plaintiff never consented to receive calls from Defendant.

33. The calls were all placed to sell Defendant Aflac's goods and services, including insurance.

34. Plaintiff's privacy has been violated by the above-described telemarketing calls.

35. The Plaintiff never provided his consent or requested the calls.

36. The aforementioned calls to the Plaintiff were unwanted.

37. The calls were non-consensual encounters.

38. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

39. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

40. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

41. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's

behalf; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.

42. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the class.

43. Excluded from the Class are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

44. Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that cluttered legitimate communications.

45. This Class Action Complaint seeks injunctive relief and money damages.

46. The Class, as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

47. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

48. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

49. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

50. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

51. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

   a. Whether Defendant sent multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

   b. Whether Defendant's conduct constitutes a violation of the TCPA; and

   c. Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

52. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class because the Plaintiff has no interests which are antagonistic to any member of the Class.

53. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this

action on behalf of the other members of the Class and have the financial resources to do so.

54. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

55. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

56. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

57. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of

the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

58. Defendant's violations were negligent, willful, or knowing.

59. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

60. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from sending telemarketing calls, including calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Injunctive relief prohibiting Defendant from sending calls or calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.  That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.  Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: April 15, 2025,   *Counsel for Plaintiff and all others similarly situated*

By: /s/ *Tristan W. Gillespie*
Tristan W. Gillespie, Esq.
600 Blakenham Court
Johns Creek, GA 30022
Telephone: (404) 276-7277
Email: Gillespie.tristan@gmail.com